UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                           :
TRUSTEES OF THE BRICKLAYERS AND            :
ALLIED CRAFTWORKERS LOCAL 5 NEW            :
YORK RETIREMENT, WELFARE AND               :
TRAINING FUNDS,                            :
                                           :
                    Plaintiffs,            :   MEMORANDUM ORDER
                                           :   03 Civ. 0748(MDF)
     -against-                             :
                                           :
                                           :
HELMER-CRONIN CONSTRUCTION, INC.,          :
                                           :
                    Defendant.             :
                                           :
------------------------------------------X

Mark D. Fox, United States Magistrate Judge.

    Plaintiffs, Trustees of the Bricklayers and Allied Craftworkers Local 5 New York Retirement, Welfare and Training Funds (the "Trustees"), move for attorney's fees, costs, disbursements, and auditor's fees, pursuant to § 502(g)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(g)(2). Defendant, Helmer-Cronin Construction ("Helmer-Cronin"), opposes the motion on the grounds that the Trustees are not entitled to a mandatory award of attorney's fees and other monetary damages under § 502(g) because there was no judgment in their favor and the award sought is not proportionate to the amount paid by Helmer-Cronin to the Trustees. Helmer-Cronin asserts that the Court should, instead, award attorney's fees and costs in its favor and against the Trustees because the

1

litigation was unnecessary.  Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of the undersigned United States Magistrate Judge for all purposes.  For the following reasons, the motion is granted, in part.

## Background

Helmer-Cronin is a union contractor and has collective bargaining agreements with several unions involved in the construction industry, including Bricklayers and Allied Craftworkers Local 5 (the "Union").  Pursuant to its collective bargaining agreement with the Union (the "CBA"), Helmer-Cronin was permitted to sub-contract its masonry work, so long as the sub-contractors subscribed and agreed to be bound to the terms and conditions of the CBA.  As part of the CBA, Helmer-Cronin and its subcontractors were required to make contributions to the employee fringe benefit funds so that pension and welfare benefits could be provided to employees who work at the masonry trade within the territorial jurisdiction of the union.  Article VII, Section 7.10 of the CBA provided:

> In the event that any employer bound by this Agreement does not make contributions to the fringe benefit funds as provided herein, such employer shall be charged with all collection costs, fees and unpaid expenses in addition to a money judgment for unpaid contributions.
>
> The books and records of each employer bound by this Agreement pertinent to employment of employees covered by this Agreement shall be made available at all reasonable times for inspection and audit by accountants of [the Union] and fringe benefit trustees

> . . . . Cost of inspection shall be borne by the respective funds involved except in cases where an employer is delinquent in making contributions in which case the delinquent employer shall bear the full cost of inspection and audit as aforesaid.

Affidavit of William F. Helmer, Ex. 1.

According to his affidavit in support of the instant motion, Tony Piacente, president of the Union and one of the Trustees, discovered in 2002 that Helmer-Cronin was employing non-union subcontractors to perform masonry work on some its projects. The Union, therefore, requested an audit of Helmer-Cronin's books and records to determine the extent of the unpaid contributions. When efforts to obtain an audit failed, the Trustees, in February 2003, brought this action, pursuant to §§ 502 and 515 of ERISA, 29 U.S.C. §§ 1132, 1145, and § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to: (1) recover delinquent contributions owed to employee fringe benefit trust funds; (2) audit the books and records of Helmer-Cronin; and (3) obtain an injunction compelling Helmer-Cronin's compliance with the CBA. The Union alleged that Helmer-Cronin had failed to make its contributions to the funds since April 5, 1999 and that the amount owed was approximately $60,000.

In June 2003, this Court entered an order directing Helmer-Cronin to permit the Trustees' accountants, Alex Kuchis and Scott Kind, both of Teal, Becker & Chiramonte CPAs ("Teal Becker"), to audit its books and records for the period April 1, 1999 to April

1, 2003.  Initially, assuming all of Helmer-Cronin's subcontracts were for labor only, Teal Becker concluded that Helmer-Cronin owed $1,395,851.60 in unpaid contributions.  After receiving the applicable subcontracts and further documentation from Helmer-Cronin, Teal Becker, again assuming that the subcontracts were for labor only, prepared a revised report, which concluded that Helmer-Cronin owed $435,365.31 in unpaid contributions.  Thereafter, the parties agreed that Helmer-Cronin owed $5,904.50 in unpaid contributions and $1,062.81 in interest, totaling $6,967.31, which was paid on March 30, 2005.

In May 2005, the Trustees filed this motion for attorney's fees, costs, disbursements, and auditor's fees.  They argue that, because they recovered unpaid contributions from Helmer-Cronin, under § 1132(g)(2), they are entitled to a mandatory award of reasonable attorney's fees and costs.  The Trustees ask that this Court award them attorney's fees for 115.5 hours at a rate of $250 per hour, for a total of $28,875.  They assert that the award of attorney's fees need not be proportional to the amount of damages recovered.  In addition to attorney's fees, the Trustees seek costs in the amount of $20.00, pursuant to 28 U.S.C. § 1923; attorney's disbursements in the amount of $982.78; and $9,206.25 in auditor's fees.

In response to the Trustees' motion, Helmer-Cronin first argues that, rather than award attorney's fees to the Trustees,

4

the Court should, using its discretion under § 1132(g)(1), award attorney's fees to Helmer-Cronin. It asserts that, in making such an award, the Court should "tak[e] into consideration that this litigation was not necessary and that the amount paid by Helmer-Cronin to [the Union] when compared to the amount initially charged in the [auditor's] [r]eport clearly supports Helmer-Cronin's contention that this litigation should not have been commenced and was commenced for ulterior motives having no relationship to the CBA." Brief by Defendant Helmer-Cronin at 5. In support of this request, Helmer-Cronin asserts that the litigation was unnecessary because it never refused to permit the Union's accountants to audit its books and records. It further argues that Teal Becker's assumption that the subcontracts were for only labor was completely unfounded and caused Helmer-Cronin to spend over $37,000 in defending against the inflated charges. It asserts that, due to its years of experience with union benefit funds, contractors in the construction industry, and Helmer-Cronin, Teal Becker "knew then and knows now that subcontracts are for labor and materials." *Id*. at 3. Second, Helmer-Cronin asserts that § 1132(g)(2), which provides for a mandatory award of attorneys fees, does not apply here because there was no "judgment in favor of" the Trustees. Finally, Helmer-Cronin contends that, the award sought by the Trustees should not be granted because it "bears no justifiable

5

relationship" to the amount in unpaid contributions and interest ultimately paid by Helmer-Cronin.

### Discussion

Section 1132(g)(2) provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan-
>
> > (A) the unpaid contributions,
> >
> > (B) interest on the unpaid contributions,
> >
> > (C) an amount equal to the greater of--
> >
> > > (i) interest on the unpaid contributions, or
> > >
> > > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> >
> > (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> >
> > (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Thus, in an action by a multiemployer against an employer for delinquent contributions under 29 U.S.C. § 1145 where judgment is ordered in favor of the plan, an award of attorney's fees and costs is mandatory. *See Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004). Here, because the Trustees brought this action under § 1145 and have recovered delinquent contributions from Helmer-Cronin,

6

§ 1132(g)(2) governs and an award of attorney's fees and costs is mandatory.

Helmer-Cronin argues that, because the parties have reached a settlement regarding unpaid contributions and interest, there was no judgment and, thus, § 1132(g)(2) does not apply. It therefore, asserts that any award of attorney's fees is governed by § 1132(g)(1) and that the Court should, instead, in its discretion, award attorney's fees in Helmer-Cronin's favor because the litigation was unnecessary. In *Iron Workers Dist. Council of Western New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, the Second Circuit Court of Appeals held that "§ 1132(g)(2) does not require that a favorable judgment be awarded on each of the four items of relief specified therein." 68 F.3d 1502, 1507 (2d Cir. 1995). The Court explained that, once there is a favorable judgment, a plaintiff is entitled to all measures of relief not already obtained and that, in cases where a defendant pays the delinquent contributions prior to judgment, "the judgement under § 1132(g)(2) will necessarily reflect fewer than all of the forms of relief available under that provision." *Id*. at 1507. In reaching this conclusion, the Court cited decisions of other circuit courts that held or stated that "an employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the

7

delinquent contributions before entry of judgment in a § 1132(g)(2) action brought to recover delinquent contributions." *Id*. at 1506-1507. Here, although Helmer-Cronin has paid the amount of delinquent contributions and interest to which the parties agreed, "the . . . settlement does not fully encompass the relief mandated by Section 1132(g)(2)" and the Trustees are, therefore, entitled to a mandatory award of fees and costs. *Trustees of the Eastern States Health and Welfare Fund v. Crystal Art Corp.*, No. 00 Civ. 0887, 2004 WL 1118245, at *4 (S.D.N.Y. May 19, 2004).

I.   Attorney's Fees and Costs

   A.   Attorney's Fees

While an award of attorney's fees is mandatory, the award must be reasonable. *See* 29 U.S.C. § 1132(g)(2)(D). In ERISA cases, to determine what is a reasonable fee, courts turn to the framework set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). *See I.L.G.W.U. v. ESI Group, Inc.*, 92 Civ. 1597, 2003 WL 135797, at *2 (S.D.N.Y. Jan. 17, 2003). The first step in this analysis is to calculate the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Hensley*, 461 U.S. at 433. Second, the court may make an upward or downward adjustment to the fee by considering other factors, including the amount involved and the results obtained. *See id*. at 430, n.3, 434.

1. <u>Lodestar Calculation</u>

   a. <u>Reasonable Hourly Rate</u>

"A reasonable hourly rate is one that is consistent with the 'prevailing market rates in the relevant community,' that is, what similarly skilled attorneys in the area would charge for similar work." *King v. JCS Enters., Inc.*, 325 F.Supp.2d 162, 169 (E.D.N.Y. 2004)(quoting *Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984)). The relevant community for determining the prevailing market rate is the district in which the deciding court is located. *See I.L.G.W.U. Nat'l Retirement Fund*, 2003 WL 135797, at *2. While the law firm of the Trustee's attorney, Stephen Ehlers, is located in Poughkeepsie, New York, in all parts of this district, the relevant community is New York City. *See Stewart v. Barclay's Business Credit, Inc.*, 860 F.Supp. 150, 150 (S.D.N.Y. 1994). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895, n.11.

Here, the Trustees seek fees at the rate of $250 per hour. In his affidavit in support of the Trustees' motion, Ehlers asserts that, given his extensive experience with ERISA

9

delinquent contributions collection actions and other ERISA matters, an hourly rate of $250 is reasonable. He notes that he has been admitted to the New York bar since 1968, has handled hundreds of ERISA delinquent contribution actions and other ERISA cases, and that the bulk of his practice is devoted to this work. The Trustees assert that this rate comports with the billing rates of attorneys in ERISA actions in New York City. Beyond their citations to numerous cases from this Court where hourly rates ranging from $200 to $340 were found to be reasonable, the Trustees offer no other evidence to demonstrate that $250 per hour is consistent with the prevailing market rate. A court, however, may rely on its own knowledge of hourly rates charged in the relevant community. *See Miele v. New York State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987). A review of recent decisions on attorney's fees applications in ERISA cases from this district reveals that the Trustees' requested hourly rate of $250 for Ehlers, an experienced ERISA attorney and partner in his law firm, is reasonable.[1] *See Mingoia v. Crescent Wall Systems*, No. 03 Civ. 7143, 2004 WL

---

[1] In his affidavit, Ehlers notes that, pursuant to the retainer agreement between the Trustees and Ehlers's law firm, litigated matters are handled at a reduced hourly rate of $195. Although the Trustees were charged less than $250 per hour, they are entitled to reasonable attorney's fees at the prevailing market rate. *See I.L.G.W.U.*, 2003 WL 135797, at *2, n.7 (noting that, even if plaintiffs are billed at a discounted rate, they are still entitled to market rate attorney's fees).

1885952, at *5 (S.D.N.Y. Aug. 23, 2004)(awarding attorney's fees at the rate of $325 per hour for an attorney in a small to medium-sized firm with over ten years of ERISA litigation experience); *Alston v. Wall Street Garage Parking Corp.*, No. 03 Civ.5418, 2004 WL 1194595, at *2 (S.D.N.Y. May 28, 2004)(approving rate of $275.00 per hour); *Crystal Art Corp.*, 2004 WL 1118245, at *6 (approving hourly rates of $350 for named partner with over 30 years of litigation experience and $275 for another partner and noting that several courts in this district have found that rates of $350 to $375 per hour for lead attorneys with substantial litigation experience are reasonable). Accordingly, the applicable rate for the lodestar calculation is $250 per hour.

    b. <u>Hours Reasonably Expended</u>

 In seeking attorney's fees, "[t]he [applicant] has the burden of producing contemporaneous time records that 'specify, for each attorney, the date, the hours expended, and the nature of the work done,' so the court can audit the hours and determine whether they were reasonably expended." *King*, 325 at 166 (quoting *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). "If the Court determines that the hours charged are superfluous or unreasonable it may deduct hours accordingly from the lodestar calculation." *I.L.G.W.U. Nat'l Retirement Fund*, 2003 WL 135797, at *2. The

court may also reduce the number of hours billed if the billing record does not sufficiently specify the nature of the work performed to enable the court to assess the reasonableness of the amount charged. *See Williamsburg Fair Housing Comm. v. United Jewish Orgs. of Williamsburgh, Inc.*, No. 76 Civ. 2125, 2005 WL 736146, at *9 (S.D.N.Y. Mar. 31, 2005). In making these reductions, a court may apply an across-the-board percentage cut to the number of hours. *See Levy v. Powell*, No. CV-00-4499, 2005 WL 1719972, at *6 (E.D.N.Y. July 22, 2005).

Here, the Trustees are seeking fees for 115.5 hours spent by Ehlers on this litigation. In support of their request, the Trustees have submitted a contemporaneous billing record of the hours Ehlers spent on this case. Helmer-Cronin does not object to the number of hours nor the descriptions provided in the record for how these hours were spent. Upon review of the billing record, however, I find that the entries fail to adequately describe the nature of the work performed. The record is replete with vague entries such as, "Study and Review file," "Telephone call with client," "Letter to Silkey," and "Research." Notice of Application at Ex. G. The majority of the remaining entries contained in the seven-page record are similarly vague and do not provide any indication as to the subject matter of the telephone calls, letters, research, and documents reviewed. Moreover, the subject matter of such entries cannot be readily

12

discerned by reference to surrounding entries or the context in which they occurred. Thus, I find that a twenty percent reduction in the total number of hours billed is warranted. *See Kirsch v. Fleet Street, Ltd.*, 142 F.3d 149, 173 (2d Cir. 1998)(finding no abuse of discretion where district court applied twenty percent reduction to hours billed for inadequately documented, inconsistent, or redundant expenditures of time); *Levy*, 2005 WL 1719972, at *8 (applying thirty-five percent reduction to attorney's hours due to vagueness, excessiveness, and redundancy of billing entries); *Aiello v. Town of Brookhaven*, No. 94-CV-2622, 2005 WL 1397202, at *3 (S.D.N.Y. June 13, 2005)(reducing hours by fifteen percent due to vague time entries); *Local 32B-32J, Service Employees Intern. Union, AFL-CIO v. Port Auth. of New York and New Jersey*, 180 F.R.D. 251, 253 (S.D.N.Y. 1998)(reducing attorney's fees by twenty percent due to vague descriptions in the time records). Applying a twenty percent reduction, the total number of hours expended is 92.4 and the lodestar amount is $23,100.

    2. <u>Adjustments</u>

There is a strong presumption that the lodestar amount represents a reasonable fee. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1997). The party seeking an adjustment to the lodestar amount bears the burden of establishing that an adjustment is necessary in order to calculate a reasonable fee.

13

*See Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992). As noted above, a court has the discretion to adjust the lodestar amount upward or downward based on the results obtained. *See Hensley*, 461 U.S. at 434. In *Hensley*, the Supreme Court held that "the extent of a plaintiff's success is a crucial factor that the district courts should consider carefully in determining the amount of [attorney's] fees to be awarded." *Id*. at 438, n.14. It explained that, "[i]f . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id*. at 436. The Court noted that "[t]his factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id*. "This does not imply, however, that the lodestar must be reduced to some limited percentage of the damages recovered; rather, it means that the fee depends on the degree of success on the prevailing claims in relation to the totality of claims pursued." *United States Media Corp. v. Edde Entertainment, Inc.*, No. 94 Civ. 4849, 1999 WL 498216, at *5 (S.D.N.Y. July 14, 1999).

Helmer-Cronin argues that this Court should reduce the requested amount of attorney's fees because it is disproportionate to the amount of unpaid contributions that were actually recovered by the Trustees. Citing to Justice Powell's

14

concurring opinion in *City of Riverside v. Rivera*, 477 U.S. 561 (1986), Helmer-Cronin asserts that proportionality is a factor that should be considered by this Court. The Second Circuit, however, rejected this interpretation of *Rivera* in *Cowan v. Prudential Ins. Co. of America*, 935 F.2d 522 (2d Cir. 1991). In *Cowan*, the Court advised that, "[a] presumptively correct 'lodestar' figure should not be reduced simply because a plaintiff recovered a low damage award." *Id*. at 526. This Court recently considered the proportionality issue in the ERISA context, in *Lampert v. Metropolitan Life Ins. Co.*, No. 03 Civ. 5655, 2004 WL 1395040, at *3 (S.D.N.Y. June 21, 2004). The Court explained that reducing an attorney's fee award based on the amount of damages recovered was contrary to the purpose behind the ERISA fee-shifting provision:

> [W]hile it is true that the degree of success may be considered in an award of fees under ERISA . . . the entire purpose of the fee-shifting provision is to enable plaintiffs to pursue benefits to which they are entitled, even where the amount claimed is relatively low. It costs money to litigate claims, however small, and unless plaintiffs were able to recover the entirety of their reasonable fees, defendants could ignore small but meritorious claims because plaintiffs would be unable to pursue them effectively . . . . The amount of damages received therefore does not serve as a cap on the fee award.

*Id*. Accordingly, Helmer-Cronin's argument that the fee award should be reduced because it is not justified by the amount recovered is without merit and this Court will not adjust the lodestar amount on this basis.

15

Finally, there is no reason to adjust the lodestar amount based on the Trustees' degree of success. Helmer-Cronin has, understandably, not put forth any valid assertion that the settlement amounted to the Trustees' "limited success" on their claims. The Trustees, in fact, succeeded on their claims by reaching a settlement with Helmer-Cronin and recovering the delinquent contributions. Although the Trustees estimated in their complaint that the amount of delinquent contributions was approximately $60,000, they indicated that, because they had not received accurate employment records from Helmer-Cronin, they could not determine the precise figure. That the Trustees ultimately recovered only $6,967.31 does not render their claims unsuccessful, or even partially successful, so as to justify a reduction in the award of fees.

B. Costs

Section 1132(g)(2)(D) provides that a court shall award "costs of the action" as well as attorney's fees. Costs include filing and subpoena fees, costs of transcripts, printing, making copies, and disbursements for witnesses. *See* 28 U.S.C. § 1920. Additionally, "[c]ourts in the Second Circuit will . . . generally award as costs 'those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients.'" *King*, 325 F.Supp.2d at 171.

The costs submitted by the Trustees are reasonable.

16

Moreover, Helmer-Cronin does not object to any of the costs as being unnecessary or excessive. Thus, I find that the Trustees will be awarded costs in the amount of $1002.78, the total amount that the Trustees have requested. This figure represents the $982.78 that the Trustees' have requested in attorney's disbursements and $20.00 in costs requested pursuant to 28 U.S.C. § 1923.

II. Audit Expenses

Section 1132(g)(2) does not expressly provide for an award of audit fees. Courts, however, often use § 1132(g)(2)(E), which provides for "such other legal or equitable relief as the court deems appropriate," as a basis for awarding plaintiffs audit costs. *See, e.g., Maguire v. America Piles, Inc.*, No. 01 Civ. 9483, 2002 WL 31626972, at *1 (S.D.N.Y. Nov 21, 2002); *Mason Tenders Dist. Council v. Envirowaste and Transcontractors, Inc.*, No. 98 Civ. 4040, 1999 WL 370667, at *2 (S.D.N.Y. Jun 07, 1999); *New York State Teamsters Conf. and Retirement Fund v. Empire Airgas, Inc.*, No. 95-CV-1313, 1996 WL 31172 (N.D.N.Y. Jan. 22, 1996). Here, the CBA also serves as a basis for awarding audit fees to the Trustees. The CBA provides:

> In the event an employer is delinquent in the payment of fringe benefit contributions due pursuant to this Agreement and the trustees initiate legal action in any court to collect the delinquent contributions the employer shall pay, in addition to the amount due as specified above *and the costs of any audit* of the employer's records the greater of:

17

>     (a) Interest on the unpaid contributions . . . or,
>
>     (b) Liquidated damages in the amount of twenty percent (20%) of the unpaid contributions . . . .
>
>     Plus the trustee's reasonable attorney's fees, costs and disbursements of the action.

Affidavit of William F. Helmer, Ex. 1 at Article X, Section 10.2 (emphasis added).

As with attorney's fees, an award of audit costs should be reasonable. *See Empire Airgas, Inc.*, 1996 WL 31172, at *3. While I find that, pursuant to the terms of the CBA, the Trustees should be awarded the costs of the audit, I find that the amount requested is not reasonable. Helmer-Cronin asserts that, in conducting the audit, Teal Becker improperly assumed that all of Helmer-Cronin's subcontracts were for labor only. It claims that Teal Becker should have known that subcontracts in the construction industry involve labor and materials. Helmer-Cronin also notes that, according to Teal Becker's billing record for the audit, this assumption was made by the Trustees and the Trustees' attorney. Given the significant discrepancy between the amount of unpaid contributions that Teal Becker first calculated, $1,385,851.60, and the amount that the Trustees eventually agreed represented the unpaid contributions, $5,904.50, and the fact that the Trustees apparently erroneously advised Teal Becker to conduct the audit under the assumption that the subcontracts were for labor only, a reduction in the

18

requested amount of audit fees is warranted. *See Laborers' Pension Fund et al. v. Midwest Demolition Co.*, No. 01 C 8616, 2004 U.S. Dist. LEXIS 3725, at *4 (N.D. Ill. Mar. 10, 2004)(stating that plaintiff is not entitled to costs associated with an inaccurate audit). I will, therefore, reduce the requested audit fees by fifty percent to $4,603.13.

Conclusion

For the foregoing reasons, the Trustees' Motion for Attorney's Fees, Costs, Disbursements, and Audit Expenses is granted. Attorney's fees in the amount of $23,100, $1,002.78 in costs and disbursements, and $4,603.13 in audit expenses shall be awarded. The Clerk is directed to enter a final judgment in these amounts.

SO ORDERED.

Dated: October 24, 2005
White Plains, New York

_____
Mark D. Fox
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Memorandum Order have been sent to the following:

The Honorable Stephen C. Robinson

Stephen Edwin Ehlers
Gellert & Klein, P.C.
75 Washington Street
Poughkeepsie, New York 12601

Robert F. Silkey
Bryant, O'Dell & Basso, LLP
500 South Salina Street
Syracuse, New York 13202